[Civ. No. 36654. Second Dist., Div. Four. Mar. 19, 1971.]

JACK GARFEIN, Plaintiff and Appellant, v.
CARROLL BAKER GARFEIN, Defendant and Respondent.

COUNSEL

Belcher, Henzie & Biegenzahn and George M. Henzie for Plaintiff and Appellant.

David G. Licht for Defendant and Respondent.

OPINION

**KINGSLEY, J.**—This is an appeal by the husband from an interlocutory decree of divorce. The decree granted a divorce to each party, found that there was no community property not previously divided by mutual arrangement, and made other orders hereinafter discussed. The husband does not here contest the granting of a divorce, nor does he object to provisions in the decree for child support; his attack is directed solely to the provisions dealing with community property and community debts. For the reasons set forth below, we affirm the decree.

The husband is, and during the marriage was, a motion picture director; the wife is, and was, a motion picture actress. During the marriage, the husband was active in procuring employment for the wife, including assisting in negotiating a "play or pay" contract for her with Paramount Pictures, under which she appeared in, and was paid for her appearance in, the motion picture "Harlow." The contract entitled Paramount to the services of the wife for six additional pictures, at the rate of one picture each twelve months,[1] commencing in May of 1966, and obligated Paramount to pay to her compensation (whether or not she was called to work) at the following rate:

| Year 1 (until May 1966) | $200,000 |
| 2 (until May 1967) | 200,000 |
| 3 (until May 1968) | 300,000 |
| 4 (until May 1969) | 300,000 |
| 5 (until May 1970) | 300,000 |
| 6 (until May 1971) | 300,000 |

For reasons known to it, Paramount did not call on the wife to appear in

---

[1] Under the contract, plaintiff was obligated to appear in one picture a year, with a payment spread over ten calendar weeks; Paramount, at its option, could require her to appear in a maximum of two pictures each year, with her compensation being thereby accelerated. Since she was never called on to make any picture after "Harlow" the exact details of the arrangements are not material on this appeal.

any pictures after "Harlow" was completed. Litigation took place, resulting in a judgment declaring the obligation of Paramount to comply with the "pay" clauses of the agreement; thereafter, payments have been made as above provided.[2] The litigation cost the marital community in excess of $126,000 for attorney fees and costs.

■ The husband contended in the trial court, and contends here: (a) that there existed a "marital partnership" between him and his wife, whereby all of their property and property rights became partnership property; (b) that, at the time of separation (June 30, 1967) they had entered into an oral property settlement agreement, whereby the payments for the first two years of the six-year period were to be used to pay community debts, the balance (if any) to be equally divided, and the payments for the final four years were to divided 60 percent to the wife and 40 percent to the husband; (c) that, if the first two contentions were not sustained, the entire payments under the Paramount contract were community property to be dealt with as such.

The trial court made fact findings adverse to the husband on the first two contentions, and held as a matter of law that the payments received by the wife after the separation were her own separate property.

## I

We cannot say that the trial court erred in its factual findings. There was substantial evidence negating the alleged "marital partnership," and substantial evidence that the alleged oral separation agreement not only was merely tentative and subject to being reduced to writing, but that it had been unfairly secured by the husband from a distraught and unadvised wife, and entered into by her under a mistake as to the applicable law. Appellant's lengthy and detailed brief does no more than to show that the trial court might (but did not) have resolved the evidence more favorably to the husband. It is not our function, nor our power, to review fact findings having substantial support in the record.

## II

■ The judgment against Paramount was not one which, itself, called for the payment of any fixed sum; it established the validity and enforceability of that contract according to its terms. Those terms, so far as herein material, required the wife to hold herself available for service in one

---

[2]The trial and judgment were in 1969; both parties assume that the 1970 payment has been made and that the 1971 payment will be made as provided in the contract.

picture[3] each 12-month period; without the consent of Paramount she could not accept other potentially conflicting engagements, business or social.[4] Although counsel has not directed us to any cases directly in point, and although we have found none, we conclude that the trial court correctly held that the payments falling due after the date of separation (June 30, 1967)—*i.e.,* the final $1,200,000—were the separate property of the wife. Section 169 of the Civil Code (as it read at the time of trial)[5] was as follows: "The earnings and accumulations of the wife, . . . while she is living separate from her husband, are the separate property of the wife."

The husband argues that the several payments were not "earnings" because the wife was entitled to them even though she did not "work"— i.e., appear in any motion pictures. But appearance in a picture was only one alternative of her obligations to her employer under the contract. Under a "play or pay" contract, the employer secures: (1) an option on the performer's services; and (2) the assurance that a performer will not, without its consent, create competition for other pictures of the employer by performing for some other producer. "They also serve who only sit and wait." We hold that the wife "earns" her agreed compensation by refraining from performing for anyone except the employer during the period of the contract, unless with the employer's consent.[6] Since the payments made after June 1967, were "earned" after that date, they were separate property.[7]

### III

The other matters complained of by the husband were all dispositions of community debts and assets committed to the discretion of the trial court; we cannot say that that discretion was abused.

The husband cites us to no authority that would *require* the trial

---

[3]See footnote number 1, *supra.*

[4]Under the contract, plaintiff could perform for another producer, provided she gave Paramount notice of her intent; in that event. Paramount was required either to consent or to schedule her for its own picture at the time or times involved.

[5]The provision is now found in section 5118 of the Civil Code. Since the statutory provision is unchanged we do not reach the issue of the applicability of the 1969 legislation to property reduced to possession after January 1, 1970.

[6]The effect of the contract, obviously, was to limit plaintiff in bargaining with other producers and subjected her to losing the opportunity to appear in pictures for other producers, which she might regard as important to her career or her bank account. It is immaterial, in determining the status of the contract, that Paramount, in fact, did not restrict plaintiff's activities; the potential limitation still existed.

[7]The duty to pay, where no picture was made, did not accrue until the final day of each 12-month period, since the wife was required to hold herself available for the full period. The compensation, thus, was not "earned" until that last day.

court to prorate the community debts incurred in the Paramount litigation according to the ultimate division of the proceeds of the Paramount contract. A debt is community or separate at the time it is incurred; it does not change its character merely because the beneficial effect of the consideration received may survive the marital cohabitation.

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied April 12, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1971.