[No. B214462. Second Dist., Div. One. Oct. 21, 2010.]

In re the Marriage of LINDA SIVYER-FOLEY and MARTIN J. FOLEY.
LINDA SIVYER-FOLEY, Appellant, v.
MARTIN J. FOLEY, Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication with the exception of Discussion parts II. through VIII.

COUNSEL

Law Offices of Gary W. Kearney and Gary W. Kearney for Appellant Linda Sivyer-Foley.

Law Office of Mary-Lynne Fisher, Marilyn M. Smith and Mary-Lynne Fisher for Appellant Martin J. Foley.

OPINION

JOHNSON, J.—Linda Sivyer-Foley appeals the judgment in this marital dissolution action awarding respondent Martin J. Foley partnership distributions from his law practice and allocating property and debts among the parties. The principal issue on appeal is whether the court erred in awarding Martin[1] as his separate property his share of partnership profits for the year in which the parties separated because the profits were not distributed until the following calendar year, after the parties' separation. Martin protectively cross-appeals, asking us to review the court's findings on support, reimbursement and taxes in the event we reverse the characterization of such law firm profits. We find the trial court erred in finding that all of Martin's partnership profits were his separate property, and reverse for a redetermination of the trial court's findings and orders that were based upon this conclusion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Martin and Linda were married March 21, 1986. At the time, Martin was employed at the law firm of Bryan, Cave & McRoberts as a senior partner. Linda worked at TWA (Trans World Airlines), and after retiring from TWA, became a housewife. On January 1, 1990, Martin joined Sonnenschein, Nath & Rosenthal (Sonnenschein) as an equity partner. Martin and Linda had a daughter, Michelle, born in February 1988. Child support for Michelle terminated in June 2006.

---

[1] To avoid confusion and not out of disrespect, we refer to the parties by their first names.

[2] Pursuant to a stipulation, the parties have agreed that a small portion of the record concerning Martin's firm partnership agreement and his compensation is confidential. Although we have reviewed this portion of the record, to protect the parties' privacy, we have not cited it in this opinion.

The parties separated on November 7, 2003, and Linda filed a petition for legal separation on January 20, 2004. On March 9, 2004, the parties entered into a stipulation and settlement providing for, among other things, spousal and child support. Trial commenced January 8, 2007, and concluded October 19, 2007. During trial, both the parties testified. Martin called as witnesses Edwin B. Reeser, the managing partner of Sonnenschein's Los Angeles office, and Thomas Pastore, a business evaluation analyst. Linda called as a witness Jack Zuckerman, who testified solely on the issue of the value of Martin's interest in Sonnenschein. The trial court issued its memorandum of decision on April 18, 2008, and entered judgment on December 23, 2008.

## DISCUSSION

### I. *Community's Right to Receive Profits from Martin's Law Firm*

Linda argues that the trial court's conclusion is contrary to *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561] (*Brown*), which held that nonvested pension rights represent a property interest that is subject to division during dissolution proceedings. (*Id.* at pp. 841–842.) Thus, part of Martin's postseparation partnership distribution was a right to receive a benefit that was earned during the existence of the community and belonged to the community even though he received it after the date of separation. Martin contends that the pension cases and their progeny are distinguishable because here, pursuant to the partnership agreement, he did not have a vested right to his partnership distribution until calculated and confirmed by the partnership, an event which occurred after his separation from Linda.

#### A. *Factual Background*

##### 1. *Trial Testimony*

Martin was employed as an equity partner at Sonnenschein, an Illinois limited liability company. As an equity partner, Martin was allocated an ownership share in the partnership, which was adjusted every two years. Sonnenschein partners receive a percentage of the firm's profits as compensation, using a formula based on technical skills, hours billed, clients that the partner originated, quality of the partner's accounts receivable, and contribution to the firm's community through recruiting, pro bono work, and firm administration. Typically, the firm receives 40 percent of its income in the last three months of the year. During the year, Martin received semimonthly draws against his share of the firm's future profits, calculated as 55 percent of

his income for the year based on budget projections. The remainder of a partner's distribution is received in three installments: the first in December, the second around the 10th of January, and the third during the last week of January.

The firm's policy and planning committee determines partnership compensation at the end of the calendar year. If a partner leaves before the determination of the prior year's compensation, pursuant to the firm's partnership agreement, the partner forfeits the right to receive any amounts in excess of the bimonthly draws that the partner has already received.

### 2. *Trial Court's Ruling*

The trial court found that there was no community interest in Sonnenschein's January 2004 partnership distributions (2004 Partnership Distribution) to Martin. Relying on *In re Marriage of Iredale & Cates* (2004) 121 Cal.App.4th 321 [16 Cal.Rptr.3d 505] (*Iredale*), the court reasoned that compensation was governed by the partnership agreement, which provided that partners have no vested interest in yearend distributions until such time as the distributions are approved by the partnership. Furthermore, the partnership agreement had been consistently applied to deny compensation to any partner who left the firm prior to yearend. Finally, partners have no share in any of the firm's accounts receivable or work in progress, and thus have no income until the firm's profits are determined at the end of the year. The court concluded because Martin had no interest in the 2004 Partnership Distribution until January 2004, which was after the date of the parties' separation, the community had no interest in these partnership distributions.

### B. *Discussion*

■ We hold that part of the 2004 Partnership Distribution is community property. Absent an agreement by the parties, Family Code section 2550[3] imposes on the trial court in marital dissolution proceedings a duty to value and divide equally the parties' community property estate. (§ 2550; *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 924 [72 Cal.Rptr.2d 856, 952 P.2d 1124].) A spouse's time, skill, and labor are community assets and his or her earnings during marriage are community property, but after separation, earnings and accumulations of a spouse are separate property. (§§ 760, 771, subd. (a).) The trial court must characterize the property for purposes of this

---

[3] All statutory references herein are to the Family Code unless otherwise noted.

division as separate, community, or quasi-community. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 291 [39 Cal.Rptr.2d 673].) The characterization of property as community or separate can be determined by the date of acquisition, the application and operations of presumptions, or by whether the spouses have transmuted the property. (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 732 [91 Cal.Rptr.3d 427].) In characterizing a benefit, courts consider all relevant circumstances. (*In re Marriage of Horn* (1986) 181 Cal.App.3d 540, 544–548 [226 Cal.Rptr. 666].) The party claiming that property acquired during the marriage, which is presumed to be community property, is actually separate property has the burden of overcoming this presumption by a preponderance of the evidence. (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1586, 1591 [59 Cal.Rptr.3d 419].)

The trial court has broad discretion to determine the manner in which community property is divided, although, absent an agreement, it must be divided equally. (§ 2550; *Brown, supra,* 15 Cal.3d at p. 848, fn. 10.) Accordingly, we review the trial court's judgment dividing marital property for an abuse of discretion. (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201 [90 Cal.Rptr.3d 802]; *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966 [22 Cal.Rptr.2d 537].) In addition, we review the trial court's factual findings regarding the character and value of the parties' property under the substantial evidence standard. (*Dellaria,* at p. 201; *In re Marriage of Ettefagh, supra,* 150 Cal.App.4th at p. 1584.) Ultimately we review characterization issues independently because they are a mixed question of fact and law involving application of the law to facts. (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 184 [74 Cal.Rptr.2d 825, 955 P.2d 451]; *In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1015 [16 Cal.Rptr.3d 220].)

Linda analogizes Martin's right to his compensation from Sonnenschein to the pension benefits at issue in *Brown, supra,* 15 Cal.3d 838, where the court determined that because pension benefits represented a form of deferred compensation for services rendered, the employee's right to such benefits was a matter of contractual right derived from the terms of the employment contract. (*Id.* at p. 845.) Therefore, to the extent that pension rights, whether vested or not, derived from employment during the marriage, *Brown* held they constituted a community asset subject to division in a dissolution proceeding. (*Id.* at p. 842.)

■ Other cases have applied similar principles to difficult-to-characterize assets. Time of acquisition is the key factor considered. (*In re Marriage of*

*Lehman, supra,* 18 Cal.4th at p. 177.) "Perhaps the most basic characterization factor is the time when property is acquired in relation to the parties' marital status." (*In re Marriage of Haines, supra,* 33 Cal.App.4th at p. 291.) Therefore, to apply the proper analytic focus, we must first look to see if the right to the payment accrued during the marriage. (*In re Marriage of Rossin, supra,* 172 Cal.App.4th at p. 736.)

In *In re Marriage of Rossin, supra,* 172 Cal.App.4th 725, the parties disputed the characterization of a disability policy paid for solely by the wife prior to marriage from her separate funds. The wife received benefits under the policy while married. (*Id.* at p. 730.) *Rossin* reasoned that disability was a right to draw from an income stream that accrued prior to marriage and the timing of the receipt of benefits was irrelevant. (*Id.* at pp. 737–738.) Furthermore, *Rossin* found the fact that the benefits were a substitute for wages was irrelevant. (*Id.* at p. 738.)

In *In re Marriage of Frahm* (1996) 45 Cal.App.4th 536 [53 Cal.Rptr.2d 31], upon dissolution the spouses split the husband's pension. Many years later, the husband took early retirement and received a one-time lump-sum incentive payment from his employer for doing so. (*Id.* at p. 538.) *Frahm* noted that under previous authorities, such benefits were evaluated under a test that considered whether they were based upon past compensation or were meant to replace future earnings, but it found the test insufficient. (*Id.* at p. 543.) However, relying on *Brown, supra,* 15 Cal.3d 838, where the court stated that " '[t]he joint effort that composes the community and the respective contributions of the spouses that make up its assets, are the meaningful criteria,' " *Frahm* found the one-time payment to be separate property. (*Frahm,* at p. 544, italics omitted.) *Frahm* reasoned that the husband's right to receive the lump-sum incentive payment was not based on the efforts of the community, but resulted solely from his employer's beneficence after the parties' dissolution. (*Id.* at pp. 543–544.)

Under these principles, the community's right to part of the 2004 Partnership Distribution accrued prior to separation. Martin's efforts on behalf of the community during the year garnered him the right to receive his share of the partnership profits at the time the firm chose to calculate them. His right to receive partnership profits was not based on the firm's beneficence at the time of their distribution postseparation, but rather his performance on behalf of the firm during the entire previous year. The firm did not reward him for his time spent during December 2003 and January 2004; rather, it rewarded him for his efforts all year long. This view is consistent with *Brown, supra,* 15

Cal.3d 838, where the court found that the right to retirement benefits represented a property interest, and, to the extent that such a right derived from employment during marriage before separation, it was a community asset. (*Id.* at p. 842.) "Throughout our decisions we have always recognized that the community owns all pension rights attributable to employment during the marriage." (*Id.* at p. 844.)

■ The fact that Martin's right to receive the firm's profits could be defeated if Martin withdrew from the partnership before the time the firm actually calculated and distributed them does not affect our analysis. The vesting of the community property interest is distinct from whether Martin's contractual right to receive his partnership distribution had ripened. Thus, although Martin's right to receive 2003 profits in January 2004 was contingent upon his continued employment with the firm, the community property interest in part of them vested during the period before the parties' separation in November 2003.

In any event, as a factual matter, because Martin did not withdraw from the partnership, his right to receive the 2004 Partnership Distribution was not defeated, and his argument based upon a contingency that did not occur cannot affect the present characterization of the property.[4]

Here, the trial court relied on *Iredale, supra*, 121 Cal.App.4th 321, where the court divided the wife's law partnership capital account. As part of the division, the court considered whether a $220,000 distribution debited to wife's account prior to the date of property valuation should be included for purposes of valuing it as a community asset. The court found that the distribution to her was made on account of her postseparation work for the law partnership, and therefore was separate property. (*Id.* at pp. 330–331.) *Iredale* factually is distinguishable on that basis. The wife's labors that produced the right to the distribution were made postseparation. Here, Martin's labor that produced the right to distribution that Linda claims as community property was made preseparation and is subject to apportionment

---

[4] Linda has argued that there was no evidence before the trial court of an apportionment of Martin's efforts for the period 2002 to 2004 which would provide the basis of his share of firm distributions for 2005 and 2006. She suggests a "proportional approach" that would result in a finding that 70 percent of the distributions for 2005 and 2006 are community because they are based upon facts occurring during the existence of the community (2002–2004). We reject Linda's argument because the firm's allocation of ownership share, made every two years based on factors reflecting the partner's contributions to the firm, was nothing more than a formula for computing the actual compensation to be received when the right to receive such compensation accrued. Although this formula was based upon historic facts (accounts receivable, recruiting efforts, technical skill, hours billed) occurring during the existence of the community, the facts underlying the genesis of Martin's percentage share was merely foundation of the compensation formula going forward.

and division on remand pursuant to the method of apportionment chosen in the trial court's discretion. "Whatever the method that it may use, however, the superior court must arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' " (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 187 [discussing different methods of apportionment].)

Nonetheless, Martin relies on *Garfein v. Garfein* (1971) 16 Cal.App.3d 155 [93 Cal.Rptr. 714] (*Garfein*), where one spouse was a movie actress who had a contract with Paramount Pictures to make six movies, one per year over a six-year period. The studio agreed to pay her, whether or not it used her services. The parties separated after the second year of the contract, and the husband contended the payments under the third through sixth years of the " 'play or pay' " clause were community property. *Garfein* concluded these payments were the wife's separate property because she earned them after separation. (*Id.* at pp. 158–159.) *Garfein* found that under the contract, the wife earned her payments by refraining from working for other studios, even if she did not perform for Paramount Pictures. Thus, the payments were not earned until the time the wife performed under the contract, either by making a movie or refraining from working for anyone else. Payments made in the third through sixth years of the contract were therefore separate property because they were not earned until that time. (*Id.* at p. 159.)

In that respect, although *Garfein, supra*, 16 Cal.App.3d 155 involved the right to receive payments under a contract such as the Sonnenschein partnership agreement at issue here, *Garfein* is not inconsistent with *Brown, supra*, 15 Cal.3d 838 or other cases which look to the time when the compensation is earned, rather than when it is received. As the wife in *Garfein* did not earn her payments under the contract until after separation, Martin earned his right to payment under the contract when he performed legal services for the firm during the calendar year, not when the right to receive such payments ripened as a result of the firm's calculations. Although the contractual right to receive the actual payment could be defeated by his withdrawal from the partnership, the community's right to the underlying compensation accrued during the entire year prior to the date of separation. On remand, the trial court is directed to determine the community share of Martin's 2004 Partnership Distribution.

II.–VIII.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 521.

## DISPOSITION

The judgment of dissolution is affirmed in part and reversed in part. The parties are to bear their own costs on appeal.

Rothschild, Acting P. J., and Chaney, J., concurred.