Filed 1/23/14  Marriage of Ward CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of MAGGIE and JESSE E. WARD, JR.<br>_____<br><br>MAGGIE B. WARD,<br><br>      Appellant,<br><br>      v.<br><br>JESSE E. WARD, JR.,<br><br>      Respondent. | B243672<br><br> (Los Angeles County<br> Super. Ct. No. BD465331) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham, Judge.  Affirmed.

Maggie B. Ward, in pro. per., for Appellant.

Jesse E. Ward, Jr., in pro. per., for Respondent.

_____

Appellant Maggie B. Ward appeals from the judgment entered in a marital dissolution action between her and respondent Jesse E. Ward, Jr.[1] On appeal, Maggie argues that the trial court erred in (1) awarding certain real property to Jesse as his sole and separate property, (2) awarding all rights and benefits in an Exxon Mobil pension plan to Jesse as his sole and separate property, and (3) failing to award certain furniture and furnishings in the marital residence to Maggie as her sole and separate property. For the reasons set forth below, we affirm the judgment without prejudice to Maggie's right to seek further relief in the trial court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Maggie and Jesse first married in 1974 and divorced in 1986. They remarried in September 1990 and separated in April 2007. Maggie filed a petition for dissolution of marriage in May 2007. Prior to and during their marriage, Maggie and Jesse acquired various real properties in California, Nevada, and Mississippi. For a few years after their legal separation, both parties continued to live in the marital residence in Los Angeles; however, by the time of trial, Maggie had moved out. Maggie and Jesse were both retired from work and had no minor children in their care.

In March 2009, while the dissolution action was pending, the trial court approved a stipulation signed by the parties regarding the temporary possession of their personal property. Under the stipulation, Maggie was allowed to remove certain furniture, home furnishings, and other personal property from the marital residence, without prejudice to either party's rights concerning the proper characterization and division of the property. The parties agreed that they would not sell or otherwise dispose of the property in their respective possession until further order of the court.

At various times during the dissolution proceedings, Maggie and Jesse were each represented by counsel. However, after several years of litigation, the attorneys for each

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity and convenience, and not out of disrespect. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

party eventually withdrew from their respective representations, and as of the trial date, both Maggie and Jesse were representing themselves.  The trial was held over a two-day period on June 28 and 29, 2012.  Maggie and Jesse each attended the trial and offered various exhibits into evidence.  The trial court admitted some of the exhibits offered by the parties and refused to admit others.  At the conclusion of the trial, the court granted the dissolution and made findings on the characterization and division of certain assets.

The trial court found that a house on Cadillac Lane in Nevada, a tract of land in Mississippi, a house on LaSalle Street in Moreno Valley, and certain financial accounts were Maggie's sole and separate property.  The court found that a house on Gammila Drive in Nevada, a condominium at 8805 Penridge Place in Inglewood, and a house at 8825 Penridge Place in Inglewood were Jesse's sole and separate property.  The court found that the marital residence on Sherbourne Drive in Los Angeles was community property and ordered the parties to meet and confer on the disposition of that residence. With respect to Jesse's pension benefits, the court ordered the parties to prepare a qualified domestic relations order for Jesse's pension plans with Exxon Mobil, McDonnell Douglas, and the United States Air Force.  With respect to the household furniture and furnishings, the court awarded each party all furniture and furnishings currently in his or her possession as that party's sole and separate property.  The trial court reserved its jurisdiction to make any orders that might be necessary to carry out its judgment and to divide equally between the parties any other community assets or liabilities that were omitted from division in the judgment.

On August 29, 2012, Maggie filed a notice of appeal.[2]

---

[2]     Maggie filed her notice of appeal following the trial court's oral rendition of the judgment and entry of the minute orders from the trial, but prior to entry of the written judgment.  For purposes of this appeal, we treat the premature notice of appeal as filed immediately after entry of judgment.  (Cal. Rules of Court, rule 8.104(d); *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1223, fn. 11; *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 413, fn. 7.)

**DISCUSSION**

Maggie raises three arguments on appeal. First, she contends that the trial court erred in awarding the real property located at 8825 Penridge Place in Inglewood to Jesse as his sole and separate property because the property was acquired by Jesse during their marriage without Maggie's knowledge or consent. Second, she claims that the trial court erred in awarding the Exxon Mobil pension benefits to Jesse as his sole and separate property because Jesse fraudulently signed Maggie's name on certain forms relinquishing her right to benefits in that plan. Third, she asserts that the trial court erred in refusing to award her certain furniture and furnishings that remained in the marital residence because those items previously had been awarded to Maggie during the first divorce.

## I.      General Law on Marital Property Division

In a marital dissolution action, absent an agreement by the parties, the court must generally divide the community estate equally. (Fam. Code, § 2550; *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 924.) "The trial court must characterize the property for purposes of this division as separate, community, or quasi-community. [Citation.] The characterization of property as community or separate can be determined by the date of acquisition, the application and operations of presumptions, or by whether the spouses have transmuted the property. [Citation.]" (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 525-526.) "The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations which are reviewed for substantial evidence. [Citation.]" (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.)

Under Family Code section 760, there is a general presumption that all property, real or personal, acquired during marriage is community property. (Fam. Code, § 760; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 290-291.) However, under the form of title presumption codified in Evidence Code section 662, "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title," and such "presumption may be rebutted only by clear and convincing proof." (Evid. Code, § 662.)

4

In the absence of an allegation that any interspousal agreement violated the fiduciary duty owed by the spouse (Fam. Code, § 721), "[t]he mere fact that property was acquired during marriage does not . . . rebut the form of title presumption; to the contrary, the act of taking title to property in the name of one spouse during marriage with the consent of the other spouse effectively removes that property from the general community property presumption. In that situation, the property is presumably the separate property of the spouse in whose name title is taken. [Citations.]" (*In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 186-187.) "[T]he party asserting that title is other than as stated in the deed . . . has the burden of proving that fact by clear and convincing evidence." (*Id.* at p. 189.)

## II.     Maggie Has Failed to Provide an Adequate Record on Appeal

A fundamental rule of appellate review is that an appealed judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . . [Citations.]'" (*Ibid.*; see also *Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].) To overcome this presumption, the appellant must provide an adequate appellate record demonstrating error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) "'A necessary corollary to this rule [is] that a record is inadequate . . . if the appellant predicates error only on the part of the record he [or she] provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.' [Citation.]" (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.) Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct, and on that basis, affirm. (*Maria P. v. Riles*, *supra*, at pp. 1295-1296; see also *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 ["[f]ailure to provide an adequate record

5

on an issue requires that the issue be resolved against [appellant]"]; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [failure to provide an accurate record "precludes an adequate review and results in affirmance of the trial court's determination"].)

Here, Maggie has not provided an adequate record on appeal for this court to review her challenge to the sufficiency of evidence supporting the trial court's judgment. In filing her notice of appeal and designating the appellate record, Maggie elected to proceed with a reporter's transcript for only the second day of the two-day trial, opting not to request a reporter's transcript for the first day of trial. Maggie also failed to transmit to this court any of the exhibits that were offered by the parties or admitted into evidence by the trial court during the trial proceedings.[3] As a result, the only records before this court that pertain to the evidence presented at trial are the reporter's transcript from the June 29, 2012 proceeding, the minute orders from the June 28 and 29, 2012 proceedings, and the judgment of dissolution. From this limited record, we cannot conclude that the evidence was insufficient to support the trial court's findings regarding the proper characterization and division of the parties' property.

With respect to the 8825 Penridge Place property, the record reflects that the trial court found that a 1999 deed purporting to transfer Maggie's interest in the property to Jesse was fraudulent and thus inadmissible, but that other pre-1999 documents demonstrated title to the residence was held solely in Jesse's name and was his separate property. Maggie argues on appeal that this asset should have been deemed community property because Jesse acquired it during their marriage without her knowledge and consent by misrepresenting himself as an unmarried man. However, none of the exhibits on which the trial court based its finding about the separate property character of the

---

**3** In her notice designating the record on appeal, Maggie did check a box requesting that all exhibits admitted into evidence or marked for identification be copied into the clerk's transcript on appeal. However, the trial court specifically advised the parties at the conclusion of the trial that it was returning their respective exhibits to them, and ordered the parties to retain the exhibits in their custody and to produce them as part of the appellate record in the event of an appeal.

8825 Penridge Place residence were included in the record on appeal. Additionally, because the record on appeal fails to include a complete transcript of the oral proceedings, we cannot determine whether any additional evidence concerning the residence was presented during the first day of trial. Based on this record, Maggie has failed to meet her burden of affirmatively demonstrating error in the trial court's ruling.

With respect to the household furniture and furnishings, the judgment reflects that the trial court awarded each party all furniture and furnishings in his or her possession as of the time of trial. Maggie asserts on appeal that some of the items that remained in the marital residence after she moved out should have been found to be her sole and separate property because they previously were awarded to her as part of the judgment in the first divorce. However, Maggie has not identified which items in the residence she believes were her separate property, nor has she cited to any evidence showing that the furniture and furnishings that were awarded to her in the prior dissolution action were the same items at issue in the current action. Furthermore, as discussed above, Maggie's failure to provide a complete reporter's transcript for the two-day trial precludes this court from determining exactly what evidence was presented to the trial court, and whether such evidence was sufficient to support its findings on the division of the parties' assets. The incomplete appellate record submitted by Maggie does not support her claim of error in the trial court's ruling.

With respect to the Exxon Mobil pension plan, there is nothing in the record to suggest that the trial court found that all of the rights and benefits in that plan were Jesse's sole and separate property. Instead, the trial court directed the parties to prepare a qualified domestic relations order regarding the Exxon Mobil pension plan and two other pension plans issued through Jesse's former employers.[4] The trial court also expressly

---

**4**      A domestic relations order "relates to the provision of . . . marital property rights to a spouse, former spouse, child, or other dependent or participant" and "is made pursuant to a State domestic relations law." (29 U.S.C. § 1056, subd. (d)(3)(B)(ii).) A domestic relations order is qualified if it "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or

7

reserved its jurisdiction to divide any community assets or liabilities that were not divided in the judgment and to make any other orders that might be necessary to carry out the terms of the judgment. While Maggie contends on appeal that there was evidence showing that Jesse fraudulently signed documents relinquishing her right to receive benefits in the Exxon Mobil plan, we cannot determine from this record whether any such evidence was presented at trial, and if so, whether the trial court made any finding of fact based on that evidence. Based on the record before us, it appears that the trial court simply ordered the parties to prepare a proposed qualified domestic relations order regarding Jesse's pension plans and reserved its jurisdiction to later determine the parties' respective rights to receive any benefits under those plans. Maggie's claim that the trial court awarded the Exxon Mobile pension benefits to Jesse as his sole and separate property is not supported by the record on appeal.

Finally, we note that the parties made representations during oral argument that there has not been full compliance with the trial court's judgment, including its orders regarding the disposition of the Sherbourne Drive residence and the preparation of a qualified domestic relations order for Jesse's pension plans. Accordingly, we affirm the judgment, but do so without prejudice to the court reconsidering these issues in the future in light of circumstances arising from the non-compliance with the terms of the court's orders.

portion of the benefits payable with respect to a participant under a plan." (29 U.S.C. § 1056, subd. (d)(3)(B)(i).) An "alternate payee" means "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." (29 U.S.C. § 1056, subd. (d)(3)(K).)

## DISPOSITION

The judgment is affirmed without prejudice to Maggie's right to seek further relief in the trial court. The parties shall bear their own costs on appeal.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.