Filed 1/23/14  Marriage of Henry CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re the Marriage of GEORGIA and MICHAEL HENRY. | C070404 |
| GEORGIA HENRY,<br><br>        Respondent,<br><br>    v.<br><br>MICHAEL HENRY,<br><br>        Appellant. | (Super. Ct. No. FL037906) |

After 24 years of marriage, Georgia Henry (petitioner in the trial court) and Michael Henry divorced.[1]  Following a three-day court trial, the trial court issued a statement of decision on numerous matters.  Michael appeals, contending the court erred

_____

[1]  For purposes of clarity we shall refer to the parties by their first names.

1

(1) in finding $161,000 from Georgia's mother to build a cottage and upgrade a septic system was a gift, (2) in valuing the improvements, and (3) in awarding accounts receivable and a 1929 Ford Phaeton to him. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Michael and Georgia married in 1985 and separated in 2009. Michael was a welder of 20 years with his own business. He also was an avid tool collector.

Georgia worked for Fashion Optical Displays at the time of trial. She earned $15 an hour, grossing about $2,850 per month.

In 2004 Georgia's mother, Betty Perry, sold her house and the proceeds, $161,000, were transferred into a joint bank account belonging to Georgia and her mother. The funds were used to construct a cottage in Michael and Georgia's back yard and to upgrade the septic system that served both the main residence and the cottage. Georgia's mother was to live in the cottage rent free for the rest of her life.

An appraiser estimated the improvements increased the value of the parcel by $150,000. The property was valued at $215,000 prior to the improvements and $365,000 at the time of trial. The $150,000 in increased value was awarded to Georgia by the trial court under Family Code section 2640.[2]

Michael asserts he made only $12,654 in 2010, or $1,054 per month. He also had a $535 monthly truck payment. The court valued Michael's business at $29,484: $20,000 in accounts receivable, $17,201 worth of work in process, and $3,190 in cash on hand, less $10,907 for business debts. The court awarded the business to Michael.

In addition, the couple had numerous items of personal property appraised by an agreed-upon appraiser. Among the items was a 1929 Ford Phaeton, which was

---

[2] All further statutory references are to the Family Code unless otherwise designated.

2

distributed to Michael.  The court accepted the appraiser's valuation of the vehicle at $21,500.

The court issued a statement of decision.  Michael filed a timely notice of appeal.

**DISCUSSION**

**I.**

The trial court has broad discretion to determine the manner in which community property is divided.  (§ 2550; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 848, fn. 10.)  Accordingly, we review the trial court's judgment dividing marital property for an abuse of discretion, reversing only if the trial court's decision is not supported by substantial evidence.  (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201; *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966.)  We review the trial court's factual findings regarding the character and value of the parties' property under the substantial evidence standard.  (*Dellaria*, at p. 201; *In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1584.)  We review matters of law de novo. (*Dellaria*, at p. 201; *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230.)

**II.**

Michael argues the trial court erred in finding the $161,000 given by Betty Perry, Georgia's mother, to build the cottage on the couple's property was a gift.  According to Michael, Perry did not give her daughter $161,000, but gave her "access to her checkbook for the specific purpose to build a cottage that she would then be able to live in, rent free, for the rest of her life."

In its statement of decision the trial court found:  "The evidence at trial established that $31,141.74 of improvements were paid for from gifts characterized as an advance on Georgia's inheritance from her mother, Elizabeth 'Betty' Perry, that actually went into and were utilized in improving the overall property with an improved engineered septic system and related improvements as reflected in Trial Exhibit 2.  The balance of the Court-recognized improvements totaling $118,859 were improvements made to the

3

'mother-in-law cottage' built on the property. The overall cost of the improvements, as a whole, was $161,043.39 pursuant to Trial Exhibit 3 in evidence. The Court finds that the entirety of this sum was expended in improving the Circlewood property and the entirety of this sum was a gift by way of an inheritance advance from Georgia's mother Betty Perry."

The court cited the trial testimony of Georgia and Betty Perry, and the deposition testimony of Michael, in support of its finding. In addition, the court noted the copies of checks were from an account funded by Elizabeth [Betty] Perry in the names of Elizabeth Perry and Georgia only. Georgia established that a total sum of $161,043.39 of separate property funds obtained from her mother was used to improve the family home.

As for the present value of the improvements, the court cited the testimony of the appraiser, who valued the overall improvements at the time of trial at $150,000. The court found this testimony persuasive and noted Michael offered no contrary appraisal.

In finding the funds were a gift, the court determined that Betty Perry intended to give Georgia the money unconditionally, Georgia accepted the gift by using the money to improve the property, and the withdrawal of funds by Georgia with Betty Perry's knowledge ratified and confirmed the gift. The court found no agreement between Betty Perry and her daughter that in any way restricted or limited Georgia's rights to withdraw the funds.

The court rejected Michael's contention that Betty Perry received a life estate in the property. No writing supported such a claim, and the lack of any document would bar such a claim under the statute of frauds. (Civ. Code, § 1624, subd. (a)(3).)

The record supports the trial court's findings. In deposition, Michael testified Georgia inherited about $160,000 from her mother. At trial, Michael testified that the source of the money for the cottage was the money Georgia received from her mother.

Georgia testified her mother gave her $161,000 as a gift, which she and Michael used to build the cottage and improve the septic system. In addition, Georgia stated the

4

funds were deposited into an account jointly held by her and her mother, not a community property account.

Betty Perry testified she gave her daughter "approximately [$]160,000" as a gift, a sort of early inheritance after she sold the family home. The money was deposited into a joint account with Georgia. The money was used to build a cottage on the couple's property, and Betty Perry discussed this with Michael. Although Betty Perry wanted Michael to sign an agreement acknowledging the arrangement, Michael "wouldn't hear of it." However, he never objected to the money being an inheritance.

The appraiser testified that he had appraised the property about two months prior to trial. The value of the property without the cottage and improvements to the septic system was $215,000. The appraiser valued the improvements funded by Betty Perry's gift to her daughter at $150,000, increasing the value of the community property to $365,000.

Given the evidence before it, the trial court's determination that the $161,000 was a gift from Betty Perry to her daughter Georgia was supported by substantial evidence.

### III.

In a related claim, Michael argues the appraiser's valuation of the cottage "defies any credibility or common sense." Michael renews his contention that in applying for a construction permit, Georgia certified to the Town of Paradise that the value of the cottage addition was $55,424.

The trial court considered Michael's claim and rejected it. The court noted: "This contention was never established by any testimony from Georgia on either direct or cross-examination. There was never any showing that Georgia computed the 'job value' shown in Trial Exhibit 20, or that the figure was utilized by anyone other than the Town of Paradise for internal purposes. Moreover, any valuation figure reflected on Trial Exhibit 20 would have to give way to the actual trial testimony of the Certified Appraiser,

5

Robert Martin, as reflected in Trial Exhibits 15 and 16 and his testimony in court, which evidence was far more convincing to the Court as to valuation."

Again, our review of the record provides substantial evidence to support the trial court's conclusion. The appraiser testified at length as to the basis for his valuation, and Michael provided no appraisal testimony to refute this testimony.

**IV.**

Michael claims the trial court erred in awarding the accounts receivables and work in process to him in the property settlement. He argues at trial that he testified, " 'Nobody owes me nothing, sir,' " and the evidence does not support an award for $20,000 in "phantom accounts receivables" and $17,201 for work in process.

In its decision, the court awarded "Michael his established business enterprises established during marriage, including his welding business and his fencing business, for which he is licensed by the State of California, at a value of $20,000 for the accounts receivable, $17,201 for the work in process as reflected in Trial Exhibit 33, $3,190 for the cash on hand as is reflected in Trial Exhibit 33, and the business debt of <$10,907> as was reflected in Trial Exhibit 25. The net valuation of the business as awarded to Michael is $29,484, as was reflected in lines 131 to 145 of the Propertizer Schedule attached to the final and concluding Post-Trial Brief of Georgia Henry . . . . The Court declines to charge Michael with the $10,854 of miscellaneous items reflected on the same Propertizer at line 118, concluding there is insufficient proof that the Respondent should be charged with these assets, particularly in light of the Court's rulings herein."

Again, the record supports the trial court's assessment of the evidence. Michael ran a welding business and was licensed as a C13 contractor to construct fencing, railings, and balconies. At trial, Michael provided no information about his business. Instead, he claimed he currently was not making any money, but was borrowing money from family and friends. In addition, Michael told the court, "Nobody owes me nothing" for past work.

6

In contrast, Georgia testified her husband ran a profitable welding business and frequently was paid hundreds of dollars in cash by his customers. Georgia was involved in the paperwork for Michael's business and kept track of whether customers paid.

In addition, a vocational rehabilitation counselor testified. After reviewing Michael's background and experience, the counselor stated Michael had a good chance for continued employment as a welder. The counselor estimated Michael's potential earnings at $46,000 per year.

Given Michael's reticence and failure to provide any documentation as to the status of his business, the court relied on Georgia's familiarity with the business and accepted her valuation. We find no abuse of discretion.

## V.

Finally, Michael disputes the trial court's decision to award the 1929 Ford Phaeton to him at what he considered an inflated price. Instead, Michael argues the court should have ordered the car sold and the proceeds divided equally.

In its decision, the trial court accepted the appraiser's valuation of the Ford Phaeton at $21,500 and awarded the asset to Michael. The court observed: "The Court declines to accept Michael's suggestion that the vehicle be sold and the net proceeds divided. The Court determines that the vehicle has been adequately valued and it is appropriate for the Court to award the vehicle to Michael rather than go through the process of having the parties have to sell the vehicle. Accordingly, the Court exercises its discretion to award the vehicle to Michael at the appraised valuation."

In evaluating the trial court's rulings on the division of community property we grant broad deference to the trial court. The party challenging the ruling bears the burden of establishing an abuse of discretion. (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182; *In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 526.) Michael fails to meet this burden. He provides no evidence that the appraiser's valuation

was faulty, or that the court acted outside the bounds of reason in awarding him the vehicle.

## DISPOSITION

The judgment is affirmed.  Georgia shall recover costs on appeal.


        RAYE        , P. J.


We concur:


    NICHOLSON    , J.


     ROBIE      , J.