Filed 11/19/20  Marriage of Simmons CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of WINDY and GEORGE SIMMONS. | 2d Civil No. B298608 (Super. Ct. No. D351612) (Ventura County) |
| WINDY SIMMONS,  Appellant, | **[REDACTED]** |
| v. | |
| GEORGE SIMMONS,  Respondent. | |

Windy Simmons (wife) appeals from a second judgment on reserved issues filed in April 2019 and a postjudgment order denying her motion to set aside portions of the judgment.  Wife contends that the trial court erroneously ruled that proceeds received by wife's former husband, George Simmons (husband), are his separate property.  Years after the parties had separated, husband received the proceeds in settlement of his claim against

a company that had purchased his business, employed him to help run the business, and subsequently fired him.  Wife argues that the proceeds are community property that must be divided equally between the parties.  In addition, wife claims that the trial court erroneously denied her request for additional child support.  We affirm.

## Sealed Clerk's Transcript

The record consists of a reporter's transcript of a court trial, a two-volume clerk's transcript, and a sealed clerk's transcript that includes, inter alia, the agreement for the purchase of husband's business.  We have concurrently filed public (redacted) and sealed (unredacted) versions of this opinion.  We hereby order the unredacted version sealed.  Both the redacted and unredacted versions shall be provided to the parties.  Omissions in the public (redacted) version are shown by the notation, [REDACTED AND FILED UNDER SEAL].

Pursuant to rule 8.46(g)(2)(A) and (B) of the California Rules of Court, the parties were required to file a public redacted version and a confidential unredacted version of their briefs.  Husband complied with this requirement, but wife failed to comply.  Although wife's briefs refer to the sealed clerk's transcript, she filed only a public unredacted version.  To protect the confidentiality of the sealed documents, we hereby order wife's opening and reply briefs sealed.

## Facts

The parties married in June 1996.  They separated in July 2012.  A judgment of dissolution of marriage was filed in October 2015.  During the marriage and before the parties separated, husband acquired a 20 percent interest in Zindagi Games, Inc.

2

(Zindagi).  The remaining 80 percent was owned by Umrao Mayer.

In 2016 Zindagi's business was sold to AZ pursuant to an "asset purchase agreement," hereafter "purchase agreement."[1] **[REDACTED AND FILED UNDER SEAL]**

After the sale Zindagi continued to exist, but it had no assets.  A stipulated judgment on reserved issues, signed by the court and parties in February 2019, decreed that after the sale husband "has a 20% interest in Zindagi Games, Inc. which is entirely community property."

The purchase agreement "provided for a lump sum payment [from AZ to Zindagi] . . . of approximately $15,000,000 minus certain escrow funds."  **[REDACTED AND FILED UNDER SEAL]**

Husband received his 20 percent share in 2016.  His gain on the sale was $2.775 million.  According to the February 2019 stipulated judgment on reserved issues, the proceeds from the sale are community property.

AZ hired about 63 of Zindagi's employees, including husband and Mayer.  The statement of decision states that "[b]oth [h]usband and Mayer accepted . . . employment contracts as at-will employees of AZ."

 **[REDACTED AND FILED UNDER SEAL]**

The purchase agreement "provided for certain performance consideration to be paid to Zindagi."  **[REDACTED AND FILED UNDER SEAL]**  Umrao Mayer explained:  "There were metrics

---

[1] Wife's opening brief notes:  "'AZ' is a pseudonym used . . . at Trial for the purchasing company.  That is not the true name of the company . . . ."  The true name is confidential.

that we [Zindagi's business as sold to AZ] had to hit. And if we hit these metrics that had to do with how much revenue per day and how profitable we were, then we got some multiple of that profit paid back to us as performance consideration." "After 18 months, we had to be at $60,000 a day and profitable or AZ could pull the plug and close down the business unit . . . ."

Mayer referred to the performance consideration as "'earnouts.'" **[REDACTED AND FILED UNDER SEAL]** The earnouts were payable "[a]t the end of each year for three years" – 2016, 2017, and 2018. They were to "be paid to Zindagi [which was] obligated to distribute [them] to . . . [Mayer] and [husband]" in proportion to their ownership interest in Zindagi.

The earnouts "were measured by annual net income of the Zindagi business unit." **[REDACTED AND FILED UNDER SEAL]**

**[REDACTED AND FILED UNDER SEAL]**

Before selling Zindagi's business, Mayer contemplated that, including the expected performance consideration, Zindagi would receive $75 million from the sale. Thus, he expected performance consideration of approximately $60 million. Mayer testified, "[W]e wouldn't have sold our company for $15,000,000."

No performance consideration was paid. Effective December 1, 2016, just short of one year after husband had started working for AZ, his employment was terminated. AZ also terminated Mayer's employment.

In April 2017 husband and Mayer filed a demand for arbitration of the performance consideration issue. They claimed that AZ's termination of their employment had denied them the opportunity to earn performance consideration.

4

The arbitration was settled by AZ's payment of $13 million to Zindagi. Mayer treated his 80 percent share of the $13 million as a capital gain "because it was gained on the sale of the Zindagi assets." Mayer testified, "This was just like when we sold the business, I got my 80 percent, [husband] got his 20 percent. It was part of the business sale."

Husband's 20 percent share of the settlement, less attorney fees, was $2,231,368. On his 2017 federal income tax return, husband reported his share as a long-term capital gain of $2,099,626 from the sale of Zindagi's assets. Husband testified that it "was a mistake" to characterize the transaction as "proceeds from the sale of Zindagi assets."

The parties agree that they have a community property interest in $225,000 of husband's share of the settlement proceeds. According to husband, the $225,000 is 20 percent "of the amount AZ had held back from the purchase price" of Zindagi's assets. Wife contends that the remainder of the settlement proceeds, hereafter referred to as "the settlement proceeds" or "the arbitration recovery," is also community property. Husband claims that the remainder is his separate property. In February 2019 a court trial was conducted on this issue.

*Statement of Decision*

The trial court filed an 11-page statement of decision. It concluded that the settlement proceeds are husband's separate property. The court reasoned: "Notwithstanding Mayer's testimony that he would not have sold Zindagi for 15 million (the original sale price), the additional earnout payments were not guaranteed. The payments were based on the performance of the employees of AZ working in the Zindagi Business Unit. Had

5

those earnouts been received, they would have been the result of the [Zindagi] team's post-separation efforts as employees, not owners. Husband no longer had an ownership interest in Zindagi . . . . Further, the court is not persuaded by Husband's and Mayer's designation of the arbitration settlement (for the performance payments) as capital gains on the sale of Zindagi. What may be designated in one way for favorable tax treatment is not dispositive for the purpose of characterization [of property] in the marital action. [Citation.]" (Underlining omitted.)

*Standard of Review*

"[W]e review the trial court's factual findings regarding the character[ization] . . . of the parties' property [as separate or community] under the substantial evidence standard." (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 526.) "But de novo review is appropriate where resolution of 'the issue . . . requires a critical consideration, in a factual context, of legal principles and their underlying values [because] the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law.'" (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734.)

*No Error in Characterizing Settlement*
*Proceeds as Husband's Separate Property*

Wife argues that the trial court erroneously characterized the settlement proceeds as husband's separate property. Wife reasons: "[T]he real question is, what is the 'source' of the arbitration settlement recovery? The 'source' was, in fact, community property. The recovery was based upon claims derived from a claimed breach of the Assets Purchase Agreement. That agreement was obtained in exchange for a sale of Zindagi assets. Since the Court found that [husband's] 20% interest in

Zindagi at the time of sale was community property, the ultimate 'source' of the arbitration recovery was, therefore, community property." Wife contends that, because the source of the arbitration recovery was community property, the recovery itself was also community property: "Once the source [of an asset] is determined to be community property, then that asset, as well, is community property." (Capitalization and bold omitted.) (See *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17, 24 ["where property has been acquired with commingled separate and community funds, . . . each retain[s] its own character if clearly ascertainable by tracing its source"].)

The parties' 20 percent community property interest in Zindagi was the source of husband's share of the $15 million purchase price for Zindagi's business. Since the source was community property, husband's share of the $15 million was also community property. But the source of the arbitration recovery was not the parties' community property interest in Zindagi. The source was (1) an employment contract between AZ and husband, and (2) a provision in the purchase agreement that gave husband a contractual right to earn performance consideration if, during his employment, Zindagi's business as sold to AZ exceeded specified levels of profitability.

"[C]ontractual rights, where the right to payment is earned during marriage, are community property . . . ." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746.) Husband's right to the payment of performance consideration could not be earned during his marriage to wife. The parties separated in 2012, and Zindagi's business was sold more than three years later in 2016. Thus, performance consideration could be earned only after separation. The use of the term "earned" is appropriate because

AZ employed husband to help run the business.  **[REDACTED AND FILED UNDER SEAL]**  "The earnings and accumulations of a spouse . . . after the date of separation of the spouses, are the separate property of the spouse."  (Fam. Code, § 771, subd. (a).)

If performance consideration had actually been paid to husband pursuant to the purchase agreement, it would have been his separate property because it would have been earned through his post-separation performance as AZ's employee.  (See *Garfein v. Garfein* (1971) 16 Cal.App.3d 155, 159 ["Since the payments made after [the date of separation] were 'earned' after that date, they were separate property"].)  The settlement proceeds were paid to husband as compensation for the denial of the opportunity to earn performance consideration.[2]  Since performance consideration, if earned, would have been husband's separate property, it follows that the settlement proceeds paid to compensate him for the denial of the opportunity to earn performance consideration is also his separate property.

Wife maintains that husband's arbitration recovery should be characterized as community property because on his federal income tax return he reported the transaction as a capital gain from the sale of Zindagi's assets.  But recitals in income tax returns are not conclusive proof as to the character of property.  (*Hopkins v. Detrick* (1950) 97 Cal.App.2d 50, 56-57.)  Husband testified that it "was a mistake" to characterize the transaction as "proceeds from the sale of Zindagi assets."  The proceeds were

---

[2] **[REDACTED AND FILED UNDER SEAL]**

8

from "the arbitration settlement, not the sale of the assets, obviously."[3]

In its statement of decision the trial court concluded that, because husband's "cause of action against AZ arose post-separation," wife "has the burden to establish that the settlement of the cause of action is traceable to a community claim." Wife contends that the trial court erred in imposing on her the burden of proving that the arbitration recovery was community property. She asserts that "the burden should have [been imposed on husband] to prove that the recovery was not community property." We need not consider this issue. If husband had the burden of proving that the recovery was not community property, he met his burden.

We reject as baseless wife's claim that "[t]o allow [husband] to keep the arbitration settlement without compensation to the community is contrary to his duty as a fiduciary." Wife reasons: "[I]f the arbitration settlement proceeds were separate property, that means that [husband] somehow 'converted' the Zindagi [community property] assets into separate property by selling them through an Assets Purchase Agreement, and then later collecting the benefits of that contract through an arbitration settlement. Or, he gave away Zindagi assets without consideration to the community estate." Husband did not convert community property into separate property or give away

---

[3] The tax return was prepared by husband's accountant, who testified at the trial. The accountant was asked, "Do you recall there having been an arbitration that was the source of the settlement?" The accountant replied: "I don't know what the source of the settlement was. I just got the number."

9

community property.  The settlement proceeds compensated him for the lost opportunity to earn performance consideration.

*Child Support*

The parties have three children.  In view of the trial court's ruling that the settlement proceeds are husband's separate property, wife maintains that the court erroneously denied her request for additional child support.  The court did not err because wife had failed to file a notice of motion or order to show cause to modify child support.  (See Cal. Rules of Court, rule 5.92; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 640.)

*Disposition*

The second judgment on reserved issues and the postjudgment order denying wife's motion to set aside portions of the judgment are affirmed.  Husband shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


                                                          YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.

JoAnn Johnson, Judge

Superior Court County of Ventura

_____

Brian M. Moore, a Law Corporation; Feinberg & Waller and Brian M. Moore for Appellant.

Norris Legal Group and Gary W. Norris; Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Respondent.