Filed 2/28/19; Certified for Publication 3/25/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of DONNA and MARK OLIVEREZ. | H044451 (Santa Cruz County Super. Ct. No. FL024506) |
| DONNA OLIVEREZ, Respondent, v. MARK OLIVEREZ, Appellant. | |

Respondent Donna Oliverez (Wife) petitioned to dissolve her marriage to Appellant Mark Oliverez (Husband) in January 2007.  After the trial court declined to enforce a purported marital settlement agreement signed by the parties in 2008 (the Agreement), it held a 15-day trial in 2012 and 2013, the result of which was an order reconsidering the previous ruling and entering judgment incorporating the Agreement.  In a published opinion following Wife's appeal, we reversed the trial court's judgment and remanded the matter to the trial court, finding that it erred in vacating the prior ruling on the Agreement.  (*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1249 (*Oliverez*).)

Following remand, on December 30, 2016, based on the evidence received at trial, and after receiving further written briefing from the parties, the trial court issued a

"Statement of Decision and Final Judgment After Remand" (Judgment), in which it ruled on the issues presented at trial. Rejecting Husband's request that the court value certain community assets as of the 2012/2013 trial date and assign the pertinent real properties to him, the court instead ordered that the properties be appraised and sold once the Judgment became final. It characterized one of the properties, called La Madrona by the parties, as partially Husband's separate property, despite the parties' prior stipulation that the property was a community asset subject to Husband's right to reimbursement of separate property funds used to purchase the property. The court found that Husband used presumptively community funds to make a $600,000 equalization payment to Wife pursuant to the terms of the Agreement, thus requiring Wife to reimburse Husband only half of that amount, rather than the full $600,000. Determining neither party to be credible, the trial court denied numerous of the parties' other claims, including Husband's request for *Epstein* credits[1] based on his alleged payment of certain community expenses following the parties' separation.

Husband now argues the trial court erred in making these rulings. We hold that the trial court properly exercised its discretion to order the appraisal and sale of the real properties, and to deny Husband's request for *Epstein* credits. Husband did not object in the trial court to the court's characterization of the $600,000 payment as being from a community source, and thus forfeited that argument on appeal. However, we agree the trial court erred in characterizing La Madrona as partially Husband's separate property given the parties' stipulation to the contrary, and thus will reverse the Judgment on that limited basis.[2]

---

[1] Under the ruling of *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 (*Epstein*), a spouse who uses separate property funds after the date of separation to pay community debts is entitled to reimbursement out of the community property at dissolution absent circumstances that would make reimbursement inappropriate.

[2] We note that Wife did not file a respondent's brief, any documentation, and did not designate any record in connection with this appeal. We thus decide the appeal on

# I. FACTUAL AND PROCEDURAL HISTORY

In our opinion in the first appeal, we described the background of this dissolution action: "The parties were married in 1993 and separated in January 2007. Wife filed the petition for dissolution of marriage on January 19, 2007, and since then, the divorce proceedings have been 'contentious' and 'highly litigated' by the parties. At least five different judicial officers have made rulings in the underlying proceedings. Each party has been self-represented at various times. Additionally, wife has been represented by two different attorneys and husband has been represented by six different attorneys." (*Oliverez*, *supra*, 238 Cal.App.4th at p. 1245.) Since that opinion, each party has had at least one additional attorney, if not two.

## A. *Properties In Dispute*

Although the parties' disputes in the proceedings encompassed numerous issues, the instant appeal concerns the characterization and/or disposition of three real properties and reimbursements related to them, as well as the characterization of a payment Husband made to Wife pursuant to the Agreement.

During the marriage, 131 Silverwood Drive, Scotts Valley (Silverwood) was the family residence. Following the commencement of the dissolution proceedings, in July 2007 the court gave Wife exclusive possession of Silverwood, with orders that she make the mortgage payments and Husband service the home equity line of credit. Although Husband moved out of the home, leaving Wife in possession, Wife stopped making the mortgage payments around February 2008, and moved out of Silverwood around April 2008. Husband moved back into the home in June 2008, and lived there through the time of the first trial in 2012 and 2013. Husband claims he paid over $80,000 to reduce the principal on the Silverwood property after taking possession in 2008, alleging the mortgage and equity lines were current at the time of trial in 2012. At trial,

the record identified by Husband, Husband's opening brief, and his oral argument. (Cal. Rules of Court, rule 8.220(a)(2).)

3

Wife's appraiser valued Silverwood at $970,000; Husband's appraiser valued it at $880,000. The total secured debt on the property as of the beginning of trial was $1,003,894.57; by the end of 2012, Husband claimed he had reduced it to $994,668.81. Husband claimed $228,354 in *Epstein* credits related to Silverwood.[3]

The parties also owned a four-unit rental property at 112 University Avenue, Los Gatos (University), which had a fifth, unpermitted unit. At the time of trial, Wife's appraiser valued University at $1,175,000; Husband's appraiser valued it at $920,000. The total secured debt on the property at the time of trial was $320,450.79. Husband sought *Epstein* credits of $89,814.45 for University.

The third property at issue in this is appeal is an undeveloped, 20-acre lot in Santa Cruz, referred to as the La Madrona property, which the parties purchased as joint tenants during the marriage. The parties stipulated that Husband contributed $668,577.91 of his separate property to purchase La Madrona. At trial, Husband's appraiser valued the property at $400,000. Wife's appraiser valued the property at $750,000, while Wife herself opined that it was worth only $700,000. In August 2012, a third party offered to purchase the lot for $550,000. Husband claimed $35,708 in *Epstein* credits for La Madrona.

### B. Marital Settlement Agreement, First Trial, First Appeal and Remand

In April 2008, the parties entered into the Agreement, in which they agreed, amongst other things, to confirm the Silverwood property to Husband as his sole and separate property, along with the community interest in the University and La Madrona properties. In addition to other payments, Husband agreed to pay Wife $600,000 as an equalization payment, to be paid directly into escrow for a house Wife was purchasing on

---

[3] At trial, Husband asked the court to order reimbursement for interest he allegedly incurred on money loaned to him by his family, as well as principal. On appeal, Husband does not challenge the denial of interest. As such, we list only the principal amounts Husband claimed as *Epstein* credits.

4

Green Tree Way in Scotts Valley (Green Tree), with the understanding Husband would receive a $29,250 credit against his obligation, representing the commissions Husband earned as realtor in the purchase of the property. Husband paid Wife the $600,000, pursuant to the terms of the Agreement.[4] Husband alleges he "treated the real properties awarded to him as his, paying any shortfall in the property expenses on them with funds borrowed and/or gifted from his family."

Husband sought to enter judgment based on the Agreement, pursuant to Code of Civil Procedure section 664.6. In December 2010, the trial court denied Husband's motion, ruling, "that there was never a 'meeting of the minds' in regards to the purported marital settlement agreement such that it is thus unenforceable."

The case proceeded to trial beginning in August 2012; it lasted 15 trial days over a period of more than nine months. A different judicial officer presided over the trial than heard the motion to enforce the judgment. At the end of the trial in October 2013, the court issued a tentative ruling stating its intent to reconsider the prior order denying the motion to enforce the Agreement. (*Oliverez, supra*, 238 Cal.App.4th at p. 1246.) The court formally noticed a motion for reconsideration, affording the parties the opportunity to brief the issue. In March 2014, the court issued a statement of decision and final judgment in which it abrogated and vacated the December 2010 ruling on the Agreement. The court then entered a judgment of dissolution, incorporating the Agreement into the judgment.

Wife timely appealed the March 2014 judgment. In a published opinion, we determined there are limited circumstances in which one judge can reconsider the ruling of another judge, none of which were present in the instant case, finding, "[m]ere disagreement, as here, with the prior trial judge's ruling, however, is not enough to

---

[4] The Agreement also included a provision requiring Husband to arrange a loan to Wife from his mother and/or brother for $375,000 to complete the purchase of Green Tree; the loan bore interest of 5.5 percent, compounding quarterly.

5

overturn that ruling. [Citation.]" (*Oliverez, supra*, 238 Cal.App.4th at p. 1249.) We reversed the March 2014 judgment and remanded the matter to the trial court. (*Id.* at p. 1250.)

### C. *Proceedings Following Remand: Proposed and Final Statements of Decision*

#### 1. *Post Remand Hearings*

The trial court conducted several hearings after receiving the remittitur from the first appeal, most notably on January 8, 2016, and April 18, 2016.[5] Although Wife requested a new trial regarding the valuation of the properties, the trial court determined it could rule based on the evidence received at the 2012/2013 trial. Prior to doing so, the court received proposed statements of decision and/or additional written argument from the parties. Wife asked the court to characterize all of the real property, including the properties at issue in this appeal, as community property, to be appraised to determine their current market value and sold, with the proceeds divided between the parties. Husband asked the court to value the properties based on the evidence presented at the 2012/2013 trial, and award the properties to him in recognition of the *Epstein* credits and other reimbursements he believed Wife owed him. Husband also asked the court to award him the proceeds from Wife's sale of the Green Tree property as reimbursement for the $600,000 payment he made to Wife pursuant to the Agreement.

#### 2. *Proposed Statement of Decision*

The trial court issued a proposed statement of decision and final judgment on October 3, 2016, confirming the Silverwood and University properties as community property. The court stated, "the parties appear to agree that some portion of the [La

---

[5] Husband's appendix does not include any of the court's minute orders or other written orders issued after remand from the first appeal, aside from the proposed statement of decision filed October 3, 2016 and the Judgment filed December 30, 2016. Husband did not designate any of the transcripts from subsequent hearings as part of the record. In the Judgment, the trial court provided some information about the hearings it held after receiving the remittitur.

Madrona property] is [Husband's] separate property"; the court found the remainder to be community property, without making any findings as to what percentage was separate versus community. The court determined all three properties should be appraised and sold, with the net proceeds to be split evenly between the parties, except for La Madrona, the proceeds from which would be divided based on the relative separate and community interests. The court did not address Husband's request for reimbursement of his separate property contribution to La Madrona in the proposed statement of decision. The court determined Husband's payment to Wife of $600,000 pursuant to the Agreement was "made from what were presumptively community property assets," and ordered Wife to reimburse Husband $300,000 upon the sale of the Green Tree property, which the court determined to be partly Wife's separate property.

The court did not specifically address Husband's request for *Epstein* credits in its proposed statement of decision. Rather, it generally discussed all of the parties' remaining claims stating, "The history of this case, and the evidence presented at trial, establishes that each of these parties has made outlandish claims and assertions about the other and patently self-serving assertions about him or herself, a large proportion of which are unsupported by evidence, contradicted by other evidence, and/or inherently unworthy of belief." Husband had asserted that he was entitled to reimbursements and *Epstein* credits because family members had loaned him or gifted him money to maintain the properties after he separated from Wife. The trial court was not persuaded, finding that it "seriously questions the legitimacy of [Husband's] documents and is convinced that some if not all of them were not prepared or executed contemporaneously with the transactions they describe. . . . Because of this, this court is unable to find that the documentation of any of these purported loans presented is credible." "Since the court is unable to find either party to be credible, either as to his or her testimony or as to the documents he or she has presented to the court, the court finds that each party has failed to sustain his or her burden of proof as to the remaining claims."

7

Husband filed written objections to the court's proposed statement of decision.[6] He objected to the order for the appraisal and sale of the Silverwood, University, and La Madrona properties, claiming the requirement that the parties equally share the sale proceeds, "fails to consider the principal pay down of the mortgages on the properties with [Husband's] separate funds, which necessarily increased the equity in the assets (whether by way of loans, which [Husband] would be solely responsible to pay back by virtue of the Court's order, or gifts to [Husband] which would constitute his separate property post separation).  Under either scenario, [Wife] will receive an inequitable and unjustifiable monetary windfall, resulting in an unequal division of the community estate.  [Husband] requests that the Statement of Decision set forth the factual and legal basis for denying Fam. Code §2640 (b) reimbursement."  If the court did not award Husband his requested reimbursements, under either Family Code section 2640 or *Epstein*, Husband objected to the court's "failure to consider the value of the properties at the time of trial," arguing dividing the properties based on their current market value would result in an "unjust financial windfall" to Wife without such reimbursements. Husband did not address the court's finding that La Madrona was partially his separate property in the written objections.

Husband also objected to the court denying his requests for *Epstein* credits, arguing he provided uncontroverted testimony and evidence at the trial showing he maintained the real property assets for an eight-year period between the date of the Agreement and the date of trial by taking loans from his family.  Husband contended he paid over $1.3 million in community expenses, for which the court made no factual findings that support the court's denial of his claims for *Epstein* credits.  Husband noted the trial court cited Family Code sections 2623 and 2626 in its proposed statement of

[6] The trial court's register of actions does not show Wife filed any objections.

8

decision,[7] neither of which he believed supported the trial court's decision to deny his requests; rather he claimed the trial court had to look at case law setting forth guidelines for *Epstein* credits, arguing the court's proposed statement failed to set forth the legal and factual basis for denying the credits. He asked the court to do so in its final statement of decision.

Regarding the $600,000 payment to Wife, Husband asserted that he made the payment pursuant to the Agreement, which Wife used towards the down payment of a home. However, he did so in conjunction with his arguments about his requests for reimbursements and *Epstein* credits; Husband did not raise a specific objection regarding the court's ruling that the payment came from a presumptively community source.

### 3. *Final Statement of Decision and Judgment*

When it issued the Judgment, the court indicated it received and considered Husband's written objections, making modifications, clarifications and findings as appropriate. The trial court adopted its previous ruling that the Silverwood and University properties should be appraised once the Judgment became final and sold, with the proceeds divided equally between the parties. While the court did not provide any further description as to the basis for its decision, i.e., why the court rejected Husband's request to value the properties at the time of the 2012/2013 trial, or why it ordered them sold versus awarding them to Husband per his request, the court did address Husband's argument that the order selling the properties and dividing the proceeds failed to account for Husband's alleged pay down of the mortgage with separate property, stating, "This court finds that [Husband's] testimony and his documentation are not worthy of belief. He bears the burden to establish his right to Fam. Code section 2640(b) reimbursement. He has failed to present credible evidence in support of his claim."

---

[7] The court cited these provisions as general support for its order denying each party's remaining claims, not specifically as support for denying Husband's request for *Epstein* credits.

9

Regarding La Madrona, the court adopted its previous findings that some portion of the property was Husband's separate property and that the property should be appraised and sold. The court then added a provision allowing reimbursement to Husband for his separate property contribution to the purchase price, noting, "since he owns some number of the 20 acres as his separate property, he is only entitled to be reimbursed for the proportion of that contribution attributable to the purchase of the community property portion of the parcel."

The court did not make any modifications to its orders regarding the Green Tree property or the $600,000 equalization payment; it adopted the proposed order finding the payment came from presumptively community sources, such that Husband was entitled to reimbursement of $300,000.

As for Husband's claim that he was entitled to *Epstein* credits for monies he expended on the properties after the parties separated, the court solidified its finding that Husband's evidence lacked credibility. The court stated it was "unable [to] accept the legitimacy of [the notes Husband provided at trial], being convinced that some if not all of them were prepared and/or executed on some date well after the transactions they describe." The court further found Husband "deliberately presented these documents in an attempt to deceive this Court into believing that the notes were prepared and executed on the dates indicated on the notes, knowing that they were in fact prepared well after the dates indicated on the notes." In response to Husband's assertion that he provided uncontroverted evidence that he was required to borrow money from his family to maintain the community properties after separation, the court found, "[Husband] confuses the notion of uncontroverted, consistent and/or supporting evidence with the concept of credible evidence. The test is not whether the evidence was uncontroverted or consistent. The test is whether or not the evidence or the witness was credible. If the Court finds a witness to be not credible regarding one subject, the Court is entitled to reject that witness's testimony (and evidence proffered by him or her) regarding other subjects.

10

This Court finds that [Husband] failed to sustain his burden to present credible evidence to support his claim." In specific reference to Husband's request that the court provide explanation for the order denying his request for *Epstein* credits, the court reiterated its finding regarding Husband's credibility: "Again, if the Court finds a witness to be not credible regarding one subject, the Court is entitled to reject that witness's testimony and proffered evidence regarding other subjects. [Husband] has failed to present credible evidence that would sustain his burden to establish he is entitled to Epstein credits." As it did in the proposed statement, in the Judgment the court denied each party's "remaining claims," finding neither party to be credible.[8]

Husband noticed his appeal of the Judgment on February 28, 2016, his deadline to do so under California Rules of Court, rule 8.104(a)(1).[9]

## II. DISCUSSION

### A. *The Trial Court Did Not Err in Valuing and Disposing of the Properties*

Husband argues the trial court erred in ordering the appraisal and sale of the Silverwood, University, and La Madrona properties, rather than valuing the properties based on the evidence presented during the 2012/2013 trial and dividing the properties accordingly. We are required to review the trial court's orders dividing the community property for abuse of discretion. (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 526 (*Foley*).) "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court

---

[8] The court did not include citations to Family Code sections 2623 and 2626 in the Judgment. (See fn. 7, *ante*.)

[9] In the Judgment, the trial court ordered Husband to "prepare and file a Judgment packet to which this Statement of Decision and Final Judgment is to be attached." It does not appear from the register of actions provided in Husband's appendix that he complied with this order. The Judgment was signed and filed; its wording indicates the court's clear intent that the Judgment serve as its final decision on the merits. We therefore treat the Judgment as a final judgment under Code of Civil Procedure section 904.1, subdivision (a)(1). (See *Pangilinan v. Palisoc* (2014) 227 Cal.App.4th 765, 769.)

11

exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.]  We have said that when two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court. [Citations.]"  (*In re Marriage of Connolly* (1979*)* 23 Cal.3d 590, 598 (*Connolly*).)  We find no error in the trial court's valuation order.

### 1. *The Court Had Discretion to Value the Properties at Remand*

Husband argues the trial court abused its discretion in ordering the appraisal and sale of the three subject properties following remand on the first appeal, because it "acted outside the law," which he contends required valuation of assets at the time of the 2012/2013 trial.  Husband correctly asserts Family Code[10] section 2552 generally requires the trial court to value the community assets and liabilities "as near as practicable to the time of trial."  (§ 2552, subd. (a).)  Based on this, he contends the trial court should have reviewed the evidence presented by the parties during the 2012/2013 trial and valued the properties as of that time, rather than ordering new appraisals once the Judgment became final.  Aside from section 2552, Husband does not cite additional legal authority in support of his position.

Family court is a court of equity.  (*In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 401.)  While the language of section 2552 is clear, the trial court can find "equity require[s] a valuation as near as practicable to the court proceeding *in which the property is actually divided*," such that section 2552, "must be interpreted as requiring community property to be divided at its value as near as practicable to the court proceeding in which a *proper* division takes place.  While normally it will be at trial, it may also be on remand after appeal."  (*In re Marriage of Hayden* (1981) 124 Cal.App.3d 72, 79 (*Hayden*) [interpreting former Civil Code section 4800, a near identical predecessor to section 2552].)  The court's decision rests on its evaluation of the facts in the specific case before

---

[10] All future statutory references are to the Family Code unless otherwise noted.

12

it.  (*In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 358, fn. 2 (*Priddis*) ["*Hayden* does not stand for the broad proposition that after every appeal a reappraisal of community property must take place"].)  The Court of Appeal in *Hayden* held that the property could be valued at the time of remand, rather than the date of trial.  (*Hayden, supra,* at pp. 77-80.)  However, the court also found that the record before it was insufficient to make any determination whether the equities required reevaluating the property, and thus remanded the matter to the trial court for a yet another hearing, setting forth factors related to the parties' conduct between the time of trial and the date of remand for the trial court to consider in determining whether the equities of the case required revaluation of the property.  (*Id*. at pp. 79-80.)

Subsequently, some appellate courts have interpreted *Hayden* to require a demonstration that the parties acted unfairly in order to value the properties on remand versus at the date of trial.  (See *Priddis*, *supra*, 132 Cal.App.3d at p. 358, fn. 2 ["In *Hayden*, the court suggested that *on the facts of that case*, the conduct of the parties may have made it unfair to value certain property as of the date of trial.  ([*Hayden*, *supra*, 124 Cal.App.3d] at pp. 79-80.)"]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572, 581, fn. 6, disapproved of on other grounds by *In re Marriage of Buol* (1985) 39 Cal.3d 751 and *In re Marriage of Fabian* (1986) 41 Cal.3d 440 ["In *In re Marriage of Hayden* (1981) 124 Cal.App.3d 72, 79-80 [177 Cal.Rptr. 183], a reassessment of the disputed property was ordered upon remand after appeal in order to prevent an inequity caused by the unfair conduct of the parties."].)  We do not read *Hayden* so narrowly—there is nothing in the language of *Hayden* that limits the trial court's equitable powers to set the appropriate date of property valuation at remand only where one party acts to the detriment of the other between the date of the underlying trial and the eventual remand of the case.  We conclude *Hayden* affirms the trial court's discretion to set a property valuation date after appeal according to principles of equity based on the facts of the case.

13

## 2. *The Record Does Not Demonstrate the Trial Court Abused its Discretion in Valuing the Properties*

Here, however, as in *Hayden*, we face an additional challenge. Husband provided limited information about the trial court's proceedings following remand to the trial court after the first appeal. Husband, who proceeded by appendix under California Rules of Court, rule 8.124, did not provide any minute orders or other written orders from the hearings held in the trial court in January and April 2016; nor did he designate transcripts from those proceedings as part of the record. We do not know whether the trial court heard any evidence or argument at these hearings, which are pertinent because they potentially included evidence of what occurred between the parties during the period from the first trial to the remand to the trial court after appeal, i.e. the time relevant under *Hayden's* analysis. The absence of a record capable of evaluation caused the Court of Appeal in *Hayden* to remand the matter to the trial court to determine what facts considered under principles of equity compelled a particular valuation date. However, we conclude under the circumstances of this case that the trial court's decision to set the valuation date at the date of remand did not constitute an abuse of discretion.

Husband was on notice that providing information about what occurred between the time of the original trial and the remand of the case was necessary to this appeal. The issue of the valuation date was squarely before the trial court on remand because the parties placed it at issue. Husband asked the trial court to rule based on the evidence heard at the 2012/2013 trial and adopt the property values as stated during that trial; Wife moved the court to reopen discovery on the issue of valuation of the properties and hold a new trial. At the hearing in April 2016, the court denied Wife's motion; in the Judgment, it explained its reason for doing so: "Given the reasons for the reversal and remand, this court denied the request for reopening of discovery and additional evidentiary hearings and determined that it was appropriate to render a new Decision and Judgment based on the evidence presented at the trial." The Judgment does not detail the legal or factual

14

arguments Wife made at the April 2016 hearing, or indicate whether the court took evidence then, leaving us unable to discern the full extent of the proceedings in the absence of the minute order and/or reporter's transcript from that hearing. It is clear, however, that the trial court considered matters at that hearing relevant to its decision that the properties be valued at the date of remand because it denied Wife's request to reopen discovery on that issue.

As the trial court conducted post remand hearings in January and April 2016, there is additional information Husband could have provided to us, but did not, despite having the burden to do so. "[A] judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] . . . ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Under these principles of appellate review alone, we could find that Husband has defaulted his objection and affirm the trial court's determination that the date of remand is the appropriate date of property valuation.

However, we are also persuaded the record before us provides sufficient support for the trial court's choice of valuation date. We first observe that in the Judgment, the trial court implicitly rejected Husband's argument against valuing the properties at the date of trial rather than the date of remand and judgment. At the 2012/2013 trial, Husband presented evidence that he should be entitled to reimbursements from Wife for

15

approximately $1.3 million in alleged payments made for the properties post separation, and that he took loans from family members for that purpose. He asserted in his proposed statement of decision that dividing the properties at the current market value post remand would result in an "unjust financial windfall" to Wife if he was not reimbursed for those loan payments or other monies he alleged he paid. But the trial court found Husband's testimony that he was entitled to such reimbursements not credible, and in fact indicated that Husband's presentation of documents supporting his claims was deceitful. "This court finds that [Husband's] testimony and his documentation are not worthy of belief. He bears the burden to establish his right to Fam. Code section 2640(b) reimbursement. He has failed to present credible evidence in support of his claim." The trial court thus rejected the evidence underlying Husband's equitable argument that Wife would unfairly benefit if the trial court set the property valuation date at the time of remand. (See section II(D), *post.*)

We are also persuaded that there is separate support for the trial court's decision in equity. Wife explicitly requested in her June 2016 proposed statement of decision that the date of valuation of the properties should be the date of remand as opposed to the date of the first trial, arguing that "[i]n light of the 'law of the case' finding [the Agreement] unenforceable, the parties' reasonable reliance on Judge Morse's ruling of unenforceability as the parties conducted their litigation that consumed four more years through trial, the Court's determination not to reopen discovery or conduct another trial of this 10 year old case, and the obsolescence of the stale real property values as estimated in 2012, 2013 and 2014, fairness and equity compel the Court to order the reappraisal, sale and equitable division of the net proceeds yielded from the 6 real properties that constitute the lion's share of the remaining marital community estate." She suggested that the court take "judicial notice of the local real estate market since 2012 (as per [Wife's] July 26, 2013 Request for Judicial Notice for Increase in Real Estate Values) in concluding the properties surely appreciated since then."

16

Drawing every inference in favor of the trial court's decision as we are required to do, we agree that once the trial court determined that Husband's reimbursement claims were not credible, the age of the case, the well-known appreciation of real property that occurred over the years while the litigation was pending in the trial court and on appeal, and the obsolescence of the 2012/2013 property valuation, provided a sufficient basis for the trial court to decide that it was equitable to set the date for valuation of the properties in dispute at the date of remand and Judgment, not the date of the 2012/2013 trial.  We observe that as a result of the trial court's ruling, the property is being divided equally between the parties, as required by section 2550.  For these reasons, our sense of equity and fairness is not offended by the trial court's decision, and we hold that the trial court did not abuse its discretion when it chose the property valuation date.

### 3. *The Trial Court Did Not Abuse Its Discretion in Ordering the Sale of the Properties*

Husband asserts the trial court erred in ordering the sale of the properties, rather than awarding them to him in equalization for the reimbursements and credits he believes Wife owes him, arguing the sale of the properties is not necessary in order to accomplish an equal division of the community estate.  We are not persuaded.  The trial court has broad discretion to determine the manner in which to divide community property, keeping in mind the requirement of section 2550 that the community estate be equally divided between the parties.  (*Connolly*, *supra*, 23 Cal.3d at p. 603; *Foley*, *supra*, 189 Cal.App.4th at p. 526.)  Thus, we review the trial court's order for abuse of discretion.  (*Foley*, *supra*, 189 Cal.App.4th at p. 526.)

In *Connolly*, the Supreme Court confirmed, "[t]he exercise of a trial court's sound discretion [to divide property] is best preserved by maintaining a maximum degree of allowable flexibility."  (*Connolly*, *supra*, 23 Cal.3d at p. 603.)  Keeping that in mind, there are several methods by which the trial court can divide property:  "(1) in kind, (2) asset distribution or cash out, (3) sale and division of proceeds, or (4) conversion to

17

tenancy in common where the sale of the family home is deferred . . . ." (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 88 (*Cream*).) "An order for the sale of an asset or assets and for division of the proceeds is often the most expeditious and least expensive method of resolving disputes over property . . . ." (*Id.* at p. 89, fn. 6.)[11]

Citing *In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869 (*Holmgren*), Husband suggests the trial court can only order the sale of community properties when the properties have "such value that without a sale it would be impossible to equalize the division of assets." In *Holmgren*, the trial court ordered the sale of the family residence, which the wife believed should have been awarded to her. (*Id.* at p. 872.) The Court of Appeal upheld the ruling, finding, "the award of the house to the wife would result in a grossly unequal division of the community property," as the wife was unable to purchase the husband's share. (*Id.* at p. 873.) "It is clear that a court's power under [former] Civil Code section 4800[12] must include the power to order the sale of the parties' residence when it constitutes the major portion of the community property and neither party is in a position to purchase the share of the other." (*Ibid.*)

*Holmgren* does not explicitly limit the trial court's power to order the sale of assets only where one party cannot purchase the share or interest of another, and appellate courts have upheld the sale of community assets in other circumstances. In *In*

[11] In *Cream*, the Court of Appeal determined the trial court erred in ordering an "interspousal auction" of a community asset, a parcel of land and the business the parties operated on the land, over one spouse's objection, as doing so abdicated the court's duty to value and divide the community estate. (*Cream*, *supra*, 13 Cal.App.4th at p. 89.) The appellate court confirmed its ruling did not limit the trial court's general power to order the sale of an asset where appropriate. (*Ibid.*) "However, where the asset at issue is a family business which the court finds either party is capable of operating, and each seeks its award and can purchase the other's share, a sale to a third party should not be ordered." (*Id.* at pp. 89-90.)

[12] The provisions of former Civil Code section 4800 at issue in *Holmgren* became sections 2550, requiring the equal division of the community estate, and 2553 ["The court may make any orders the court considers necessary to carry out the purposes of this division (§ 2500 et seq.)."].

18

*re Marriage of Davis*, also cited by Husband, the Court of Appeal determined the provision granting the trial court power to make any orders necessary to carry out the requirement that it equally divide the community estate, "is sufficient to give the court jurisdiction to order a sale of the community property including community real property when, in the exercise of a sound judicial discretion, the court concludes that it should do so in order to accomplish an equal division of the community property." (*In re Marriage of Davis* (1977) 68 Cal.App.3d 294, 306-307.) The *Davis* court did not place any factual limits on the trial court's ability to order the sale, other than requiring that it include "the exercise of sound judicial discretion." (*Id*. at p. 306.) Specifically, nothing in the *Davis* opinion indicated the property ordered sold was the "major portion of the community property" or that one party could not purchase the other party's interest, as was the case in *Holmgren, supra*, 60 Cal.App.3d at page 873.

We also observe that in his objections to the court's proposed statement of decision, Husband did not argue that the trial court failed to show the sale of the properties was otherwise necessary to effect an equal division, or that Husband could not buy out Wife's interest in the properties. By failing to object to the trial court's judgment on this basis, Husband forfeited these arguments on appeal. "[A]n appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below. [Citation.] The policy behind the rule is fairness. 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' [Citations.]" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826 (*Falcone & Fyke*).)

Husband also argues the court's order results in an unjust windfall to Wife, as it orders the properties sold at their current values, without consideration of the fact Husband claims to have paid the expenses on the properties since separation. As we have already mentioned and will discuss further below, the trial court determined the

19

testimony and evidence Husband presented regarding his claims for reimbursements and credits related to these alleged payments was not credible. (See section II(D), *post*.) As we will find the trial court did not err in that regard, we do not consider the court's alleged failure to constitute an abuse of discretion vis-à-vis its orders disposing of the properties. Based on the above, we uphold the trial court's orders requiring the appraisal and sale of Silverwood, University, and La Madrona.

### B. The Trial Court Erred in Characterizing the La Madrona Property

In ruling the La Madrona property was partially Husband's separate property, the trial court stated, "the parties appear to agree that some portion of a 20 acre parcel of land on La Madrona Road, Santa Cruz CA is [Husband's] separate property." The court then ordered the property appraised and sold, denying in part Husband's request for reimbursement of his separate property contribution to the purchase of La Madrona based on its finding that some portion of the 20 acres was Husband's separate property. Instead of a full reimbursement, the court found Husband was "only entitled to be reimbursed for the proportion of that contribution attributable to the purchase of the community property portion of the parcel." On appeal, Husband argues the parties stipulated the La Madrona property was 100 percent community property. Therefore, he contends the trial court abused its discretion in ruling otherwise.

Husband did not object to the court's finding, in its October 2016 proposed statement of decision, that the property was partially Husband's separate property. Rather, in his written objections, he argued only that the court failed to properly address his reimbursement request. In its proposed statement of decision, the trial court, as it did in the Judgment, stated its belief the parties agreed La Madrona was partly Husband's separate property. The court did not include a discussion of Husband's reimbursement request in the proposed statement of decision; the court ordered the property appraised and sold, with the proceeds distributed between Husband and the community in proportion to Husband's separate property ownership, which the court did not define. In

20

objecting to the proposed decision, Husband asked the court to state the legal and factual basis for denying his requested contribution, but did not address the finding that the property was partly his separate property.

As discussed in section II(A)(3), *ante*, by failing to object to the trial court's finding that the property was partially Husband's separate property, Husband arguably forfeited that argument on appeal. (*Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 826.) "However, even where a legal argument was not raised in the trial court, we have discretion to consider it when the theory raised for the first time on appeal is a pure question of law applied to undisputed facts. [Citations.]" (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436 (*San Mateo*).) The characterization of property is a question of law, which we review de novo on appeal, applying the substantial evidence standard to the court's factual findings. (*Foley*, *supra*, 189 Cal.App.4th at p. 526; *In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1015.) As the facts concerning the issue of characterization of the La Madrona property are undisputed, we have discretion to consider the issue despite Husband's failure to raise the argument in the trial court. (*San Mateo*, *supra*, at p. 436.) Under the circumstances, we elect to exercise that discretion.

The parties clearly stipulated on the record at the 2012/2013 trial to characterize La Madrona as community property, subject to Husband's right to reimbursement of his separate property contribution. In the proposed statement of decision Wife submitted in June 2016, Wife confirmed the parties' stipulation during the trial and referred to the property as community property that should be divided equally. In his July 2016 supplement to his proposed statement of decision and closing argument, Husband asked the trial court to *treat* La Madrona as his sole and separate property, because he purchased the property "with equity from a sole and separate property." Husband also filed a proposed statement of decision in July 2013, in which he asked the court to award him the property because it did not have sufficient value to reimburse him his separate

21

property contribution. However, at no point did Husband argue the property was partially his separate property and it is not clear how the trial court determined the parties agreed some portion of the property was Husband's separate property. There is nothing in the record before us indicating the parties disputed the characterization of the La Madrona property as community property at the time of the 2012/2013 trial.

Reviewing the record de novo, based on the parties' stipulation, we find the La Madrona property to be wholly community property. There is not substantial evidence supporting the trial court's finding to the contrary. Aside from the parties' clear stipulation, the record indicates the parties purchased the La Madrona property during the marriage, as husband and wife as joint tenants. Section 2581 creates a rebuttable presumption that property acquired during marriage in joint form, including joint tenancy, is community property. This presumption is one affecting the burden of proof, and can be rebutted by: "(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property." (§ 2581.) The record indicates neither of these exceptions apply in this case; the deed specifies the parties took the property as tenants in common, and there is no clear evidence of a written, valid agreement that the property is Husband's separate property. While the Agreement may have contained a provision acknowledging a portion of La Madrona to be Husband's separate property, the trial court found the Agreement to be unenforceable. More importantly, the parties stipulated to characterizing the property as community property after they entered into the Agreement.

Moreover, while the parties agreed Husband did contribute separate property funds to the purchase of the property, they also agreed at trial that Husband could be reimbursed under section 2640, which requires such reimbursement upon division of the community estate when a party makes "contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate

22

property source." (§ 2640, subd. (b).) This additional stipulation further indicates the parties' shared belief that Husband contributed funds to the purchase of community property, rather than buying his own separate property interest in the La Madrona property.[13]

Based on the above, we find the trial court erred in characterizing La Madrona as part Husband's separate property and part community property. We further find this error to be prejudicial to Husband, as there is insufficient information to know how the mischaracterization affected the determination of Husband's share of the proceeds from the sale of the property and his ability to be reimbursed for his separate property contribution. We will reverse the Judgment accordingly and remand the matter to the trial court to properly characterize the La Madrona property as a wholly community asset, and to consider the effect of that characterization on Husband's reimbursement under section 2640.

### C. Husband Forfeited His Argument re: Characterization of Equalization Payment

The trial court found the $600,000 Husband paid Wife as an equalization payment under the Agreement to be presumptively from community funds, such that it ordered Wife to reimburse Husband only half of the payment. Husband argues the trial court incorrectly applied the presumption, as Husband made the payment after separation. Even if the presumption applied, Husband contends he overcame the presumption with evidence the $600,000 came from a separate property source.

Although the trial court characterized the $600,000 payment as presumptively community property in its October 2016 proposed statement of decision, Husband did not object on that basis in his written objections to the proposed statement. As we have previously explained, the appellate court "will ordinarily not consider procedural defects

---

[13] Wife did not address Husband's reimbursement request in her June 2016 proposed statement of decision. We do not believe this evidences a rescission of her previous stipulation on this issue.

or erroneous rulings where an objection could have been, but was not raised below."
(*Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 826; see section II(A)(3) & (B), *ante*.)
While the facts underlying the La Madrona issue were not disputed, the facts concerning
the court's characterization of the $600,000 payment were. Whereas the parties
stipulated on the record La Madrona was a community property, there is no such
agreement regarding the $600,000 payment. In fact, at the outset of the trial, the parties
identified their dispute regarding the property: Wife argued it was a community asset
subject to a "loan that needs to be canceled"; Husband argued it was Wife's property
subject to reimbursement for the equalization payment. The parties presented evidence
and argument in support of their contentions. Given that the facts surrounding the source
of the $600,000 payment were in dispute, and Husband failed to object to the trial court's
characterization of the funds as coming from a presumptively community source, we find
he forfeited this argument on appeal.

### D. *The Court Did Not Err in Denying Epstein Credits*

Husband argues the trial court abused its discretion in denying his request for
*Epstein* credits related to the parties' various real properties, contending he presented
uncontroverted evidence supporting his claim. " 'Where, as here, the trial court is vested
with discretionary powers, we review its ruling for an abuse of discretion. [Citation.] As
long as the court exercised its discretion along legal lines, its decision will be affirmed on
appeal if there is substantial evidence to support it. [Citation.] . . .' " (*In re Marriage of
Geraci* (2006) 144 Cal.App.4th 1278, 1286; see *In re Marriage of Hebbring* (1989) 207
Cal.App.3d 1260, 1272.)

In arguing the trial court abused its discretion, Husband focuses on the belief he
presented sufficient evidence to prove he made payments on community property debts
with separate property funds after the date of separation, claiming Wife did not provide
any contradictory evidence. Husband does not include significant discussion of the trial
court's basis for ruling as it did; in its Judgment, the court makes it clear it denied

24

Husband's request based on its finding that he lacked credibility and failed to produce credible evidence in support of his claims. This finding significantly impacts how we review the matter on appeal.

"The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding. 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099 (*Greenberg*).) "In that role, the judge may reject any evidence as unworthy of credence, even uncontradicted testimony. [Citation.]" (*Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 979.) "We do not judge credibility on appeal. An adverse factual finding is a poor platform upon which to predicate reversible error." (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175, citing *Greenberg*, *supra*, at p. 1097.)

In reviewing the trial court's decision, we do not replace the court's exercise of discretion with our own by accepting evidence the court rejected; we are required to uphold the judgment if any substantial evidence supports the court's decision, without consideration of whether there also exists substantial evidence to support Husband's position. The credibility of Husband's testimony and evidence was part of the court's decision and thus not for us to judge in the first instance. (*In re Marriage of Calcaterra and Badakhsh* (2005) 132 Cal.App.4th 28, 34.) The trial court found Husband's testimony and evidence to be unreliable.

In particular, the court determined Husband presented untrustworthy documentary evidence to the court, in the form of the notes offered to support his claim that his family loaned him money to maintain the community assets after separation. The court found that the form used to prepare the notes was not in print until after the date the notes were purportedly signed. Not only did the trial court find it could not accept the "legitimacy" of the notes, it determined Husband "deliberately presented these documents in an attempt to deceive [the] Court into believing that the notes were prepared and executed

25

on the dates indicated on the notes, knowing that they were in fact prepared well after the dates indicated on the notes." "The evidence convinces this court that, [Husband's] testimony notwithstanding, the money received from his family was either in the nature of a series of gifts, for which no repayment has been or will be made, or was received as a series of no interest loans. There is no evidence that [Husband] has ever paid any amounts to repay or service those loans." In response to Husband's objection to the court's credibility finding, the court correctly stated the law on this issue. "[T]he trier of fact may disregard all of the testimony of a party, whether contradicted or uncontradicted, if it determines that he testified falsely as to some matters covered by his testimony (*Nelson v. Black*, 43 Cal.2d 612, 275 P.2d 473)." (*Halagan v. Ohanesian* (1967) 257 Cal.App.2d 14, 21; accord *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455.) Given that the trial court found Husband not credible on the subject of the alleged notes from his family, it was entitled to reject Husband's testimony regarding other subjects.

Whether we might have reached a different conclusion is not material, as we are not permitted to reweigh the evidence. It is the family court in the first instance which "sits as trier of fact and . . . is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding." (*Greenberg*, *supra*, 194 Cal.App.4th at p. 1099.) We must view such determinations in favor of the order. (*In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 162-163.) As the trial court gave a rational explanation for its view of Husband's credibility and for the conclusions it drew from the facts presented, we have no basis for finding an abuse of discretion in denying Husband's request for *Epstein* credits under these circumstances.

### III.   DISPOSITION

We reverse the Judgment and remand the matter to the trial court to vacate the finding that the La Madrona property is partially Husband's separate property. The court shall enter a new order designating the La Madrona property as wholly community

26

property and shall calculate the reimbursement owed to Husband for his separate property contribution to the purchase of that property based on that characterization.

_____
Greenwood, P.J.

WE CONCUR:

_____
 Grover, J.

_____
 Danner, J.

Oliverez v. Oliverez
No. H044451

Filed 3/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of DONNA and MARK OLIVEREZ. | H044451<br>(Santa Cruz County<br>Super. Ct. No. FL024506) |
| DONNA OLIVEREZ,<br><br>        Respondent,<br><br>        v.<br><br>MARK OLIVEREZ,<br><br>        Appellant. | |

BY THE COURT:

The opinion which was filed on February 28, 2019, is certified for publication.

_____
Greenwood, P.J.

_____
Grover, J.

_____
Danner, J.

        The written opinion which was filed on February 28, 2019, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

Dated: _____          _____
                                                                Greenwood, P.J.

Trial Court:                                Santa Cruz County
                                            Superior Court No.:  FL024506


Trial Judge:                                The Honorable Stephen S. Siegel


Attorney for Appellant                      Deborah S. Bull
Mark Oliverez:                              Perry, Johnson, Anderson, Miller &
                                            Moskowitz, LLP


Respondent
Donna Oliverez:


Oliverez v. Oliverez
H044451